McGREGOR W. SCOTT
United States Attorney
WILLIAM S. WONG
MATTHEW D. SEGAL
Assistant U.S. Attorneys
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700



**FILED**

MAY - 6 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 2:06-09 LKK |
| | ) | |
| Plaintiff, | ) | PLEA AGREEMENT |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD J. MARINO, | ) | DATE: May 6, 2008 |
| | ) | TIME: 9:30 a.m. |
| Defendant. | ) | COURT: Hon. Lawrence K. Karlton |
| | ) | |
| _____ | ) | |

**I.**

**INTRODUCTION**

**A.  Scope of Agreement:**  The indictment in this case charges the defendant with conspiracy to distribute marijuana, possession with intent to distribute marijuana, manufacture of marijuana, and money laundering.  This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting,

1

1 administrative, or regulatory authorities.

2 **B.   Rule 11(c)(1)(C) Specific Sentence Agreement:** The
3 government and the defendant agree that a sentence within a specific
4 range, forty-two (42) to sixty (60) months as set forth below in
5 Section VI(B), would be appropriate in this case.   Consequently,
6 this Plea Agreement is being offered to the Court pursuant to Rule
7 11(c)(1)(C) of the Federal Rules of Criminal Procedure.   Under the
8 provisions of Rule 11(c)(3), the Court may accept or reject the Plea
9 Agreement, or may defer its decision as to the acceptance or
10 rejection until there has been an opportunity to consider the
11 presentence report.   If the Court accepts the Plea Agreement, the
12 Court will inform the defendant and the government that it will
13 embody in the judgment a sentence between forty-two and sixty
14 months, the disposition provided for in this Plea Agreement.   If the
15 Court rejects this Plea Agreement, or intends to impose a sentence
16 either below 42 months or above 60 months imprisonment, the Court
17 shall so advise the parties, and allow either party to withdraw from
18 this plea agreement and be relieved of all obligations under the
19 plea agreement.   The Court will advise each party that if it does
20 not withdraw from the agreement the disposition of the case may be
21 less favorable to that party than is contemplated by this Plea
22 Agreement.

23                                  **II.**

24                      **DEFENDANT'S OBLIGATIONS**

25 **A.   Guilty Pleas:**   The defendant will plead guilty to Count I
26 (conspiracy to distribute marijuana) in violation of 21 U.S.C.   §§
27 841(a)(1), 846 and Count XI (money laundering) in violation of 18
28 U.S.C. § 1957.   The defendant agrees that he is in fact guilty of

                                     2

these charges and that the facts set forth in the Factual Basis
attached hereto as Exhibit A are accurate.

**B.   Special Assessment:**   The defendant agrees to pay a special
assessment of $200 at the time of sentencing by delivering a check
or money order payable to the United States District Court to the
United States Probation Office immediately before the sentencing
hearing.   The defendant understands that this Plea Agreement is
voidable by the government if he fails to pay the assessment prior
to that hearing.

**C.   Agreement to Cooperate:**   The defendant agrees to cooperate
fully with the government and any other federal, state, or local law
enforcement agency, as directed by the government.   As used in this
Plea Agreement, "cooperation" requires the defendant:   (1) to
respond truthfully and completely to all questions, whether in
interviews, in correspondence, telephone conversations, before a
grand jury, or at any trial or other court proceeding; (2) to attend
all meetings, grand jury sessions, trials, and other proceedings at
which the defendant's presence is requested by the government or
compelled by subpoena or court order; (3) to produce voluntarily any
and all documents, records, or other tangible evidence requested by
the government; (4) not to participate in any criminal activity
while cooperating with the government; (5) to disclose to the
government the existence and status of all money, property, or
assets, of any kind, derived from or acquired as a result of, or
used to facilitate the commission of, the defendant's illegal
activities or the illegal activities of any conspirators; and (6) to
agree to any continuance of judgment and sentencing requested by the
United States.

1    If the defendant commits any crimes or if any of the
2  defendant's statements or testimony prove to be knowingly false,
3  misleading, or materially incomplete, or if the defendant otherwise
4  violates this Plea Agreement in any way, the government will no
5  longer be bound by its representations to the defendant concerning
6  the limits on criminal prosecution and sentencing as set forth
7  herein.   The determination whether the defendant has violated the
8  Plea Agreement will be under a probable cause standard.   If the
9  defendant violates the Plea Agreement, he shall thereafter be
10 subject to prosecution for any federal criminal violation of which
11 the government has knowledge, including but not limited to perjury,
12 false statements, and obstruction of justice.   Because disclosures
13 pursuant to this Plea Agreement will constitute a waiver of the
14 Fifth Amendment privilege against compulsory self-incrimination, any
15 such prosecution may be premised on statements and/or information
16 provided by the defendant.   Moreover, any prosecutions that are not
17 time-barred by the applicable statute of limitations as of the date
18 of this Plea Agreement may be commenced in accordance with this
19 paragraph, notwithstanding the expiration of the statute of
20 limitations between the signing of this Plea Agreement and the
21 commencement of any such prosecutions.   The defendant agrees to
22 waive all defenses based on the statute of limitations or delay of
23 prosecution with respect to any prosecutions that are not time-
24 barred as of the date of this Plea Agreement.

25    If it is determined that the defendant has violated any
26 provision of this Plea Agreement or if the defendant successfully
27 moves to withdraw his plea:   (1) all statements made by the
28 defendant to the government or other designated law enforcement

4

agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Plea Agreement, or any leads derived therefrom, should be suppressed.   By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A.   Dismissals:**   The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Indictment.   The government also agrees not to reinstate any dismissed count except as provided in Parts II.C and VII.B of this Plea Agreement.

**B.   Recommendations:**

**1.   Incarceration Range:**   The government will recommend that the defendant be sentenced to a term no greater than sixty (60) months.

**2.   Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under §3E1.1(b), so long as the defendant pleads guilty, meets with

5

1  and assists the probation officer in the preparation of the pre-
2  sentence report, is truthful and candid with the probation officer,
3  and does not otherwise engage in conduct that constitutes
4  obstruction of justice within the meaning of U.S.S.G § 3C1.1, either
5  in the preparation of the pre-sentence report or during the
6  sentencing proceeding.

7          **3.   Reduction of Sentence for Cooperation:**   The government
8  agrees to recommend at the time of sentencing that the defendant's
9  sentence of imprisonment be within the range of no less than 42
10 months and no more than 60 months of imprisonment if he provides
11 substantial assistance to the government, pursuant to U.S.S.G.
12 § 5K1.1.   The defendant understands that he must comply with
13 paragraph II.C of this Plea Agreement.   The defendant understands
14 that it is within the sole and exclusive discretion of the
15 government to determine whether the defendant has provided
16 substantial assistance.   The defendant understands that the
17 government may recommend a sentence of less than the mandatory
18 minimum of 60 months imprisonment, depending upon the level of
19 assistance the government determines that the defendant has
20 provided.   If the government's recommended reduction pursuant to §
21 5K1.1 is for a sentence below the statutory mandatory minimum, the
22 government will also move the Court for a reduction below that
23 minimum term, pursuant to 18 U.S.C. § 3553(e).   The defendant
24 further understands that a motion pursuant to U.S.S.G. § 5K1.1 is
25 only a recommendation and is not binding on the Court, that this
26 Plea Agreement confers no right upon the defendant to require that
27 the government make a § 5K1.1 motion, and that this Plea Agreement
28 confers no remedy upon the defendant in the event that the

government declines to make a § 5K1.1 motion.  In particular, the defendant agrees not to file a motion to withdraw his plea based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following his sentencing, the government may move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

**C.   Limitation on Use of Information For Sentencing:**  Other than as set forth above, the government agrees that any incriminating information provided by the defendant during his cooperation will not be used in determining the applicable guideline range, pursuant to U.S.S.G. § 1B1.8.

**D.   Non-Prosecution of a Third Party:** The government agrees not to prosecute the defendant's son for whatever role he may (or may not) have had in the events described in Attachment A hereto.

**IV.**

**ELEMENTS OF THE OFFENSE**

**A.   Elements of the Offenses:**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty in Count I, conspiracy to distribute marijuana:

First, beginning no later than on or about January 2004 and continuing through on or about September 3, 2004, there was an agreement between two or more persons to distribute at least 100 kilograms of a substance containing a detectable amount of

marijuana; and

Second, the defendant became a member of the conspiracy knowing its object and intending to help accomplish it.

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty in Count XI, money laundering:

First, the defendant knowingly engaged in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value of greater than $10,000;

Fourth, that the property was, in fact, derived from illicit drug transactions in violation of 21 U.S.C. §§ 841, 846; and

Fifth, the transaction occurred in the United States.

## V.

### MAXIMUM SENTENCE

**A.   Maximum Penalties:**

For Count I, the maximum sentence that the Court can impose is forty years of incarceration, a fine of $2 million, a lifetime period of supervised release and a special assessment of $100.  The statutory mandatory minimum sentence is five years imprisonment and the statutory mandatory minimum period of supervised release is four years.   In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

For Count XI, the maximum sentence that the Court can impose is ten years imprisonment, a fine of $250,000 or twice the amount of criminally derived property involved in the transaction, a three-

year period of supervised release and a special assessment of $100.

By signing this Plea Agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty. The defendant further agrees that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.   Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to an additional three years imprisonment for Count I, in addition to an additional two years imprisonment for Count XI.

## VI.

### SENTENCING DETERMINATION

**A.   Statutory Authority:**  The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220, 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines.  The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range

1  (either above or below the guideline sentencing range) because there
2  exists an aggravating or mitigating circumstance of a kind, or to a
3  degree, not adequately taken into consideration by the Sentencing
4  Commission in formulating the Guidelines.   The defendant further
5  understands that the Court, after consultation and consideration of
6  the Sentencing Guidelines, must impose a sentence that is reasonable
7  in light of the factors set forth in 18 U.S.C. § 3553(a).

8      **B.   Stipulations Affecting Guidelines Calculation:**   The
9  government and the defendant have no agreement on the application of
10 the Sentencing Guidelines or factors set forth in 18 U.S.C. § 3553.
11 The parties do agree, however, that the appropriate sentence in this
12 case is no less than 42 months and no more than 60 months.   The
13 parties stipulate and agree neither party will seek, request, or
14 argue in support of a sentence above 60 months or below 42 months.

15                                  **VII.**

16                                 **WAIVERS**

17     **A.   Waiver of Constitutional Rights:**   The defendant understands
18 that by pleading guilty he is waiving the following constitutional
19 rights:   (a) to plead not guilty and to persist in that plea if
20 already made; (b) to be tried by a jury; (c) to be assisted at trial
21 by an attorney, who would be appointed if necessary; (d) to subpoena
22 witnesses to testify on his behalf; (e) to confront and cross-
23 examine witnesses against him; and (f) not to be compelled to
24 incriminate himself.

25     **B.   Waiver of Appeal and Collateral Attack:**   The defendant
26 understands that the law gives him a right to appeal his conviction
27 and sentence.   He agrees as part of his plea, however, to give up
28 the right to appeal the conviction and the right to appeal any

                                    10

1  aspect of the sentence imposed in this case so long as his sentence
2  is no longer than 60 months.  He specifically gives up his right to
3  appeal any order of restitution the Court may impose.

4       Regardless of the sentence he receives, the defendant also
5  gives up any right he may have to bring a post-appeal attack on his
6  conviction or his sentence.  He specifically agrees not to file a
7  motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or
8  sentence.

9       Notwithstanding the agreement in part III.A above that the
10 government will move to dismiss counts against the defendant, if the
11 defendant ever attempts to vacate his plea, dismiss the underlying
12 charges, or reduce or set aside his sentence on any of the counts to
13 which he is pleading guilty, the government shall have the right (1)
14 to prosecute the defendant on any of the counts to which he pleaded
15 guilty; (2) to reinstate any counts that may be dismissed pursuant
16 to this Plea Agreement; and (3) to file any new charges that would
17 otherwise be barred by this Plea Agreement.  The decision to pursue
18 any or all of these options is solely in the discretion of the
19 United States Attorney's Office.  By signing this Plea Agreement,
20 the defendant agrees to waive any objections, motions, and defenses
21 he might have to the government's decision.  In particular, he
22 agrees not to raise any objections based on the passage of time with
23 respect to such counts including, but not limited to, any statutes
24 of limitation or any objections based on the Speedy Trial Act or the
25 Speedy Trial Clause of the Sixth Amendment.

26      **C.  Waiver of Attorneys' Fees and Costs:**  The defendant agrees
27 to waive all rights under the "Hyde Amendment," Section 617, P.L.
28 105-119 (Nov. 26, 1997), to recover attorneys' fees or other

litigation expenses in connection with the investigation and
prosecution of all charges in the above-captioned matter and of any
related allegations (including without limitation any charges to be
dismissed pursuant to this Plea Agreement and any charges previously
dismissed).

D. **Waiver of DNA Testing**

Defendant has been advised that the government has in its
possession items of physical evidence that could be subjected to DNA
testing.  Those items were disclosed in discovery.  The defendant
understands that the government does not intend to conduct DNA
testing of any of these items.  Defendant understands that, before
entering guilty pleas pursuant to this Plea Agreement, he could
request DNA testing of evidence in this case.  The defendant further
understands that, with respect to the offenses to which he is
pleading guilty pursuant to this Plea Agreement, he would have the
right to request DNA testing of evidence after conviction under the
conditions specified in 18 U.S.C. § 3600.  Knowing and understanding
his right to request DNA testing, the defendant knowingly and
voluntarily gives up that right with respect to both the specific
items listed above and any other items of evidence there may be in
this case that might be amenable to DNA testing.  The defendant
understands and acknowledges that by giving up this right, he is
giving up any ability to request DNA testing of evidence in this
case in the current proceeding, in any proceeding after conviction
under 18 U.S.C. § 3600, and in any other proceeding of any type.
The defendant further understands and acknowledges that by giving up
this right, he will never have another opportunity to have the
evidence in this case, whether or not listed above, submitted for

12

1  DNA testing, or to employ the results of DNA testing to support a
2  claim that defendant is innocent of the offenses to which he is
3  pleading guilty.

4                                **VIII.**

5                        **ENTIRE PLEA AGREEMENT**

6       Other than this Plea Agreement, no agreement, understanding,
7  promise, or condition between the government and the defendant
8  exists, nor will such agreement, understanding, promise, or
9  condition exist unless it is committed to writing and signed by the
10 defendant, counsel for the defendant, and counsel for the United
11 States.

12                                 **IX.**

13                      **APPROVALS AND SIGNATURES**

14      **A.   Defense Counsel:**  I have read this Plea Agreement and have
15 discussed it fully with my client.  The Plea Agreement accurately
16 and completely sets forth the entirety of the agreement.  I concur
17 in my client's decision to plead guilty as set forth in this Plea
18 Agreement.

19
20 DATED:   5·6·08                        _____
21                                        JOHN R. DUREE, JR.
                                          Attorney for Defendant

22      **B.   Defendant:**  I have read this Plea Agreement and carefully
23 reviewed every part of it with my attorney.  I understand it, and I
24 voluntarily agree to it.  Further, I have consulted with my attorney
25 and fully understand my rights with respect to the provisions of the
26 Sentencing Guidelines and the sentencing factors pursuant to 18
27 U.S.C. § 3553(a) that may apply to my case.  No other promises or
28 //

                                   13

1  //

2  //

3  //

4  inducements have been made to me, other than those contained in this

5  Plea Agreement.  In addition, no one has threatened or forced me in

6  any way to enter into this Plea Agreement.  Finally, I am satisfied

7  with the representation of my attorney in this case.

8

9  DATED:  5·6·08

   RICHARD J. MARINO
10   Defendant

11

12      **C.  Attorney for United States**:  I accept and agree to this

13  Plea Agreement on behalf of the government.

14

15  DATED:  May 6, 2008

   McGREGOR W. SCOTT
16   United States Attorney

17

18  By: WILLIAM S. WONG
   Assistant U.S. Attorney

19

20

21  By: MATTHEW D. SEGAL
   Assistant U.S. Attorney

22

23

24

25

26

27

28

14

**EXHIBIT "A"**
**Factual Basis for Plea**

Between January 26, 2004 and September 3, 2004, the Defendant owned, controlled, and managed a business called Capitol Compassionate Care ("CCC") in the City of Roseville in the State and Eastern District of California.  CCC was a business enterprise whose overt, nearly exclusive purpose was the sale of marijuana.  The Defendant informed local authorities and legal professionals that CCC was a marijuana business.

On September 3, 2004, federal agents ended CCC's business by executing search warrants at CCC's premises and the Defendant's personal residence.  The agents seized approximately 3,022 grams of hashish, approximately 18,805.94 grams of processed marijuana, 617 live marijuana plants (364 at CCC and 253 at the Defendant's residence), and $105,000 in U.S. currency (at CCC).  The agents also seized and examined CCC's business records and interviewed persons with personal knowledge of how CCC operated.

The Defendant was in day-to-day control of CCC.  He hired employees to assist him in selling marijuana and otherwise executing and recording CCC's wholesale purchase and retail sale of marijuana.  Employees attended to CCC's other business expenses, its bookkeeping, and its payroll.  Every employee of CCC understood CCC's business (selling marijuana) and had agreed with the Defendant to, and did, work for CCC, assisting in marijuana distribution in exchange for a paycheck.

CCC sold about 482 pounds of marijuana under brand names such as "AK-47," "Chenoble," "High Lander," "Romulin," and "Trainwreck."  Detailed business records seized from CCC reflect CCC's purchase of at least 192,431.6 grams of marijuana for an approximate total of $1,558,604.67.  Partially completed records indicate CCC purchased an additional 32,807.7 grams of marijuana.  The records set forth the brand name of the marijuana, its unit cost, and sales price.  CCC's purchase records used code to disguise the identities of CCC's marijuana suppliers.

CCC's business records show that CCC grossed $2,275,849.40 between February 3, 2004 and August 31, 2004.  CCC business records also show that the Defendant caused CCC to pay over $150,000 towards dry cleaning, outside dining, apartment rental payments, a housekeeper, loan payments for a residence that was used to grow marijuana, a down payment for that residence, improvements to the residence, and payments on personal credit cards.

CCC maintained one of its merchant accounts at Washington Mutual Bank ("WaMu"), a federally insured financial institution.  By June 11, 2004, the Defendant had moved $56,664.41 from CCC's WaMu account into his personal checking account at WaMu ("The Personal Account").  The defendant, as CCC's principal, knew that the $56,664.41 was proceeds from CCC's sale of marijuana.  The Personal Account had in it $20,954.37 in non-criminally derived funds, but had in it no other money.  First American Title Company records show

15

1    that on June 11, 2004, First American Title Company received a wire
    transfer from the Defendant, through The Personal Account, in the
2    amount of $73,121.96.  The deposit receipt for the wire transfer
    identified the deposit as "Funds for Closing" for the New Castle,
3    California residence referred to above, which was used as a 253-
    plant marijuana grow.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28